UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE


CIVIL ACTION NO. 08-CV-77-KKC

RICHARD L. FULTON                                                           PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

CORRECTIONAL OFFICER HAMILTON, ET AL.                     DEFENDANTS


     The Court considers the following pleadings:

     (1)     The "Motion to Dismiss or in the Alternative, a Motion for Summary Judgment"(hereafter referred to as "Motion to Dismiss")  [Record No. 46] filed by counsel for the named federal defendants; [1]

     (2)     The Affidavit filed by *pro se* Plaintiff Richard L. Fulton, [Record No. 63]; and

     (3)     Several responses to the defendants' "Motion to Dismiss" filed by Plaintiff Richard Fulton, which responses are docketed collectively as Record No. 64;

     (4)     The defendants' "Reply to Plaintiff's Response to the Defendants' Motion to Dismiss" [Record No. 65].

     (5)     The "Motion to Stay Discovery" [Record No. 66] filed by counsel for the federal defendants.

---

[1] Fulton named fourteen defendants, all of whom were at the time relevant to the Complaint, officials or employees of the United States Penitentiary-Big Sandy, which is located in Inez, Kentucky ("USP-Big Sandy"). The defendants are: (1) Myron Batts (Associate Warden); (2) Paul Adams (Lieutenant); (3) Bobby Gourdouze (Emergency Preparedness Officer); (4) Frank Perrin, (Lieutenant); (5) Steven Parr (Facilities Manager); (6) Melissa Hamilton (Senior Officer); (7) Lloyd Gardner (Senior Officer); (8) Samiran Bhadra (Physician's Assistant); (9) George Roberts (Correctional Counselor); (10), Joseph George (Unit Manager); (11) Amanda Joseph (Unit Secretary); (12) Robert Lee (Correctional Counselor), (13) Jennifer Fultz, (Case Manager); and (14) Katherine Linaweaver (Associate Warden).

For the reasons set forth below, the Court will grant the defendants' "Motion to Dismiss" and deny the "Motion to Stay Discovery" as moot.

PROCEDURAL HISTORY
I. The Complaint

On April 17, 2008, Fulton filed this *pro se* civil rights action asserting claims under 28 U.S.C. §1331pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) [Record No. 2].[2] Fulton alleged that the named defendants violated his rights guaranteed under the First, Fifth and Eighth Amendments of the United States Constitution. Fulton has been confined in the  United States Penitentiary-Lewisburg, which is located in Lewisburg, Pennsylvania.[3]

Fulton's *Bivens* claims arose one year before, on April 19, 2007, when he was confined in USP-Big Sandy. Fulton alleges that on that date, he learned that Former Warden Rios had ordered him to be transferred from Housing Unit B-2 to Housing Unit C-3. Fulton objected to the transfer on the grounds that inmates from the District of Columbia ("D.C. inmates") were housed in Unit C-3, and that Fulton and his "group" did not get along with D.C. inmates. When he arrived in Unit C-3 and began complaining about his pending transfer, an incident ensued in which several prison officials physically restrained Fulton.

In his Complaint and Amended Complaint, Fulton alleged that: (1) he was subjected to

---

[2] On August 18, 2008, the plaintiff filed a Second Amended Complaint [Record No. 30], which appears to be a reiteration of the claims set forth in his original complaint [Record No. 2].

[3] Fulton is currently serving a 360-month prison term imposed on May 16, 2003, by the United States District Court for the Western District of Virginia. Fulton pled guilty to violating 18 U.S.C. §846 (conspiracy to distribute cocaine base) and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). He was also sentenced to a five- year term of supervised release. He has a projected statutory release date via good conduct of July 22, 2028.

excessive force at the hands of prison personnel; (2) he was denied proper necessary medical attention; (3) the conditions of confinement in segregated housing violated the Eighth Amendment; (4) he was retaliated against for having filed grievances and (5) USP-Big Sandy personnel prevented him from initiating the grievance process as to his claims. Fulton demanded unspecified monetary damages, and punitive damages, from the defendants.

## II. The "Motion to Dismiss" [Record No. 46]

The defendants have filed a motion asking that the complaint be dismissed, or in the alternative, that summary judgment be granted. The Court has summarized the arguments raised by the defendants in both the "Motion to Dismiss" [Record No. 46-2] and the "Reply to Plaintiff's Response to Motion to Dismiss" [Record No. 65].

## A. Failure to Exhaust Administrative Remedies

The defendants argue that Fulton failed to administratively exhaust any of the constitutional claims asserted in the Complaint. They submit the sworn Declaration of Denise M. Gottleib, Paralegal Specialist to the Consolidated Legal Center ("CLC") of the Bureau of Prisons ("BOP) [Record No. 65-2].[4]

As a preliminary matter, Gottleib states that since Fulton has been in BOP custody, he spent almost half of his time in either Administrative Detention or Disciplinary Segregation [*Id.*, ¶ 5]. She further explains that he was placed in SHU because 24 incident reports have been filed against him [*Id.*, ¶ 6]. A summary of Fulton's twenty-five disciplinary violations is set forth in

---

[4] Gottleib has access to the BOP's official files and records for inmates who are presently or have been previously, confined in CDC, Lexington, Kentucky. The records include information contained in the BOP's "**SENTRY**" database, which tracks all administrative remedies filed by federal inmates.

the "Inmate Discipline Data, Chronological Disciplinary Record"[Record No. 46-11].

As to the specific claims in this proceeding, Gottleib states that the SENTRY database reveals that Fulton did not exhaust his constitutional claims through the BOP's administrative remedy process.[5]  Fulton filed 18 administrative remedies during the one year in which he was incarcerated at USP-Big Sandy (September 7, 2006-September 6, 2007). He filed eleven of the eighteen grievances on one day, August 31, 2007.

Fulton filed all eleven grievances at the institutional level (with the warden) by way of a BP-9 "Request for Administrative Remedy." According to Gottleib, all eleven of the grievances were rejected because Fulton had failed to file a BP-8 "Request for Informal Resolution" with his Unit Team **before** filing the BP-9 "Request for Administrative Remedy" with the warden [*Id.*, ¶¶ 10-21].

### B. Failure to State a Constitutional Claim
### Against Former Warden H.A. Rios

The defendants argue that Fulton did not allege that Former Warden Rios was personally involved in the events of April 19, 2007. They cite the case of *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978),which holds that the doctrine of respondeat superior is not a basis of liability in a § 1983 action.[6] The defendants argue that under *Monell*, and other

---

[5] The administrative remedies available to inmates confined in BOP institutions are set out in the Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden. *See* § 542.14(a).  If the inmate is not satisfied with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel.  *See* § 542.15 (a) - (b).

[6] *Bivens* is the judicially-created corollary to a 42 U.S.C. § 1983 claim. Under *Bivens*, a citizen may sue individual federal agents if he or she "suffer[ed] a compensable injury to a constitutionally protected interest." *Butz v.*

4

case law, a plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct in order to find a supervisor liable.

Former Warden H. A. Rios submitted a sworn Declaration [Record No. 46-16].  Rios noted that Fulton has an extensive BOP disciplinary history which includes insolence, refusing orders, fighting, disruptive conduct, interfering with a security device, gambling, possession of intoxicants, possession of a dangerous weapon, and possession of drugs [*Id.*, ¶ 4].

Rios explained that he relied on the Associate Warden of Programs, the Case Management Coordinator ("CMC"), the Unit Managers, the Case managers, the Correctional Counselors and the Unit Team concerning the operation of correctional program responsibilities and other matters concerning inmate management, [*Id.*, ¶ 10].  While a member of the Unit Team may have sought guidance from him concerning Fulton's move from one housing unit to another, he did not recall whether he sent an electronic message to the Unit Team directing Fulton's move to another housing unit on April 19, 2007 [*Id.*, ¶ 11]. Rios disclaimed any involvement in the April 19, 2007, incident involving Fulton and the staff members [*Id.*, ¶ 14].

Rios stated that the Office of Internal Affairs ("OIA") conducted a full scale investigation of Fulton's claim that prison staff used excessive force against him. After interviewing witnesses and staff members, reviewing sworn affidavits and a video film from the prison's closed circuit monitoring system, the OIA concluded that the prison staff had not engaged in excessive force against Fulton on April 19, 2007 [*Id.*, ¶¶ 15-19].

## C. Failure to Establish Eighth Amendment Violation

---

*Economou*, 438 U.S. 478, 486, 98 S.Ct. 2894, 57 L. Ed.2d 895 (1978).

The defendants next contend that Fulton failed to establish a valid Eighth Amendment claim as to either excessive force or the denial of medical care.

### 1. Excessive Use of Force

The defendants argue that in analyzing Fulton's claims under relevant Eighth Amendment case law, such as *Whitley v. Albers*, 475 U.S. 312, (1986) and *Hudson v. McMillan*, 503 U.S., 1, 7 (1992), they did not apply excessive force to Fulton. In *Hudson*, the Court discussed that extent of the injury is one factor (among several) that should guide courts in determining whether the use of force was wanton and unnecessary. *Id*. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Id*. (quoting *Whitley*, 475 U.S. at 321).

Defendants Myron Batts, Paul Adams; Bobby Gourdouze, Frank Perrin, Steven Parr, Melissa Hamilton, and Lloyd Gardner submitted detailed sworn Declarations disputing Fulton's allegation that he was subjected to wanton, unnecessary and excessive force on April 19, 2007. They explain that a limited amount of force was applied, in good faith, to maintain and restore discipline. They contend that under the facts and circumstances, their actions did not amount to excessive force in violation of the Eighth Amendment.

The Court has summarized these defendants' version of events. Fulton had objected to his new cell assignment because he did not want to be housed with "rival gang members. To accommodate the concerns about his safety, Fulton was ordered to be placed in the SHU. While Lt. Perrin was accompanying Fulton to the SHU, Fulton began objecting to, and asking questions

6

about, his placement in SHU. Fulton began waiving at another inmate and asked that inmate to come over toward him. Fulton disregarded orders to cease conversing with the other inmate. Instead of obeying the staff's orders for the other inmate to leave, Fulton and his fellow inmate disregarded the order and continued speaking with each other.

Several times staff members ordered Fulton to stand against the wall, submit to a search and be handcuffed. Fulton ignored these orders and moved away from staff. When he placed his hand into his right pocket, the defendants became concerned that Fulton might have a potential weapon in his pocket. Fulton was verbally abusive and refused to comply with orders to "cuff-up." He then lunged at Lieutenant Perrin and resisted staff's efforts to subdue him.

None of the defendants witnessed any staff member placing Fulton in a "choke hold." They allege that the prison staff made several attempts to resolve the situation without use of immediate force. When Fulton continued to resist orders, the staff pushed him to the ground, secured him by placing hand restraints on him, and then transported him to SHU. A medical examination did not reveal any injuries, but at least two officers sustained minor injuries. The defendants further note that Fulton's alleged injuries were minimal and were inconsistent with his claims that he was punched, kicked or subjected to other forms excessive force.

## 2. Denial of Medical Care

The defendants argue that the April 19, 2007, incident did not cause Fulton to sustain injuries which could be considered as a "serious medical condition." Likewise, they argue that Fulton was not denied proper medical treatment on that date. Mr. Samiran Bhadra, a Mid-Level Practitioner, or Physician's Assistant, at USP-Big Sandy, submitted a sworn Declaration

concerning Fulton's medial condition immediately following the April 19, 2007, incident.

Bhadra states that on that date, he went to the SHU in order to assess Fulton, who claimed that excessive force had been used against him [Record No. 46-33]. Although Fulton claimed that he had blood on his mouth, Bhadra states that he found no blood on Fulton's mouth [*Id.*, ¶ 9; *see also* "Inmate Injury Assessment and Followup (Medical)," Record No. 46-35, p.2, ¶ 10 ("No blood is noted (illegible) the mouth cavity. No acute injury is noted.")]. After examining Fulton, Bhadra determined that he had sustained no injuries, and that no further medical attention was required. Bhadra instructed Fulton to take a shower [Record No. 46-33, ¶ 10].

D. Failure to Process Administrative Remedies

Defendants George Roberts (Correctional Counselor), Joseph George (Unit Manager), Amanda Joseph (Unit Secretary), Robert Lee (Correctional Counselor), Jennifer Fultz, (Case Manager); and Katherine Linaweaver (Associate Warden), submitted sworn Declarations disputing Fulton's claim that they prevented Fulton from filing administrative grievances concerning the events of April 19, 2007. They specifically denied taking any of the following actions: (1) denying Fulton access to the proper forms; (2) disregarding, or refusing to process, informal administrative remedy forms which Fulton had completed and submitted to them for processing; (3) informing Fulton that he should not concern himself with grievances because he was being transferred; and (4) verbally instructing Fulton not to file administrative remedies.[7]

_____

[7] Defendant George Roberts denied Fulton's claim that he ignored BP-8 forms (known as Requests for Informal Resolutions) [*See* Roberts Decl., Record No. 46-14, ¶¶ 10-11]. Roberts stated that in instances where informal resolution was not achieved, he would have provided Fulton with the proper forms for seeking a formal remedy with the Warden. Roberts explained that he has no involvement in the process where an inmate pursues a "sensitive" matter with the BOP Regional Director.

In his Declaration, Defendant Joseph George, Unit Manager at UPS-Big Sandy, denied that he prevented or impaired Fulton's filing of administrative remedies. George states that he did in fact process Fulton's Administrative

The six defendants referred to the SENTRY Database, the BOP's official tracking system for the filing of prisoner grievances. They note that although Fulton filed a total of 35 administrative remedies, **none** of them concerned alleged abuse of force at USP-Big Sandy. Additionally, these six defendants pointed out that Fulton filed eighteen (18) administrative remedies while confined in USP Big Sandy.  They each assert that Fulton's ability to file the 18 remedies while confined in USP-Big Sandy refutes his claim that they impaired his access to the administrative remedy process [*Id.*, ¶¶ 14-15].

While the defendants denied that they impaired or prevented Fulton's access to the administrative remedy process, they also argued that prisoners do not enjoy a protected Fifth Amendment liberty interest in an effective grievance system. They cited *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991); *Flowers v. Tate*, 925 F.2d 1463 (6th Cir.1991) and numerous other decisions which hold that "federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to the procedure."  *See Flick v. Alba*, 932 F.2d at 729.  They contend that to the extent Fulton complained of unsatisfactory or adverse decisions rendered during the administrative exhaustion process, he did not set forth a viable due process claim under the Fifth Amendment of the United States Constitution.

E. Retaliation

Fulton alleged that the defendants retaliated against him. The defendants argue that Fulton's allegation on this issue was vague and non-specific. In construing his allegations, the

---

remedies [George Decl., ¶ 9]. George further denied that he cursed at Fulton and instructed him to cease filing administrative remedies while Fulton was confined in the Special Housing Unit. George states that he advised Fulton to work with his Correctional Counselor to ensure that his administrative remedies were properly completed prior to submitting them.

defendants argue that Fulton is actually complaining about the exhaustion/administrative remedy process, as opposed to stating a true retaliation claim.

The defendants cite *Thaddeus-X v. Blatter, et al.*, 175 F.3d 378 (6th Cir. 1999), which holds that a retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct and; (3) a causal connection exists between the first two elements, *i.e.*, the prisoner's protected conduct motivated at least in part the adverse decision. *See Id.* at 394.

The defendants further state that when the alleged conduct does not state a constitutional violation absent retaliatory intent, a plaintiff needs to prove that the claimed retaliation was a "substantial and motivating factor" in the defendants' conduct. *Williams v. Kling*, 849 F. Supp. 1192, 1196 (E.D. Mich. 1994) citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977). Defendants argue that Fulton has not alleged a valid First Amendment retaliation claim under either of the standards set forth above.

### F. Hazardous Conditions

Fulton claims that he was subjected to hazardous conditions.  The defendants state that Fulton provided no details supporting this claim. They interpret the claim first as a challenge to the fact that he was transferred to USP-Big Sandy, and second, as a challenge to his classification and/or his housing assignments once he arrived at USP-Big Sandy.

Defendants' argument is that the BOP's ability to transfer federal prisoners is not a constitutional right for which due process can be invoked. They note that Congress has vested

10

the Attorney General and the Federal Bureau of Prisons with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoners. 18 U.S.C. § 3621.

Defendants then cite several decisions which hold that because decisions relating to inmate placement, transfer or classification are left to the discretion of prison officials, prisoners have no expectation of a liberty interest in these decisions. *See*, *e.g.*, *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (Federal prisoners have no due process right to eligibility for rehabilitative programs.); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir.1989).

## G. Qualified Immunity

Citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and other cases, the defendants argue that they are entitled to qualified immunity. In *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982), the Supreme Court held that federal officials, who perform discretionary functions, are entitled to qualified immunity from suit for violations of constitutional rights when their conduct does not violate clearly established law of which a reasonable person would have known.

## III. Fulton's Responses to the "Motion to Dismiss [Record Nos. 63 and 64]

Instead of filing one response to the "Motion to Dismiss," Fulton submitted an affidavit [Record No. 63] and series of pleadings [filed collectively as Record No. 64] in which he essentially reiterated the same verison of events. As to the issue of administrative exhaustion,

Fulton denies that he failed to exhaust his various complaints.  He claims that the defendants who were involved in the prison's administrative remedy process overtly impeded his ability to exhaust his complaints through the BOP's four-step process (BP-8 through BP-11). He further reiterated hat the defendants prevented him from filing "sensitive" remedies with the BOP Regional Director.

While claiming that the defendants obstructed his ability to exhaust his many claims up the administrative ladder, Fulton also complained at the same time that other BOP administrative officials rejected his grievances.   Fulton made the following comments about the BOP administrative remedy process:

> "Even when the plaintiff filed sensitive nature complaints, as encouraged to do in the case of staff abuse and complaint tampering, these sensitive complaints were rejected for undocumented purposes at the facility and regional level.
>
> It is fact that the plaintiff overly filed administrative remedies and did all in power to ensure his complaints survived through the many obstacles put in place by the defendants. Plaintiff's complaints were improperly rejected at every level although each complaint was timely filed and sone so in accord to Bureau of Prison policy.
>
> A rejection of a complaint is deemed a waiver of the exhaustion process, and plaintiff was left with no other recourse but to file this civil rights complaint in district court. . . ."

[Record No. 64, p.4].

On the issue of Former Warden Rios's liability for alleged constitutional violations, Fulton states that by making the decision to place him in the SHU on April 19, 2007, Defendant Rios was, in fact, personally involved in the events of April 19, 2007. Fulton claims that had Warden Rios not disregarded a serious threat to his safety in the first place, he would not have

12

been transferred to SHU and the events of April 19, 2007 would not have occurred.

Fulton denies lunging at Lt. Perrin Fulton, or any other defendant, and denies that Lt. Perrin instructed him to stand against the wall. Fulton denies that he was told to submit to a search and denies that he became belligerent. Fulton again states that Lt. Perrin initiated the episode on April 19, 2007 because Perrin was angry that he (Fulton) had questioned, and verbally objected to, being placed in SHU. Fulton states that the defendants kicked him, punched him, and placed him in a choke hold without any provocation. He denies that he resisted any of the defendants' efforts to subdue him.

Fulton states that in his Complaint, he provided all necessary details of how the defendants violated his rights under the Eighth Amendment on April 19, 2007. To the extent that he overlooked any facts, the event was captured on the prison's video tape.

Fulton discounts the validity of the OIA report finding that no excessive force was used against him. First, he complains that the OIA waited over a year to investigate the incident. Second, he states that the OIA investigator was a USP-Big Sandy staff member who was a "colleague and friend of all involved defendants, Robert Ranum" [Record No. 64, p.7]

On the issue of hazardous conditions, Fulton explains that Warden Rios subjected him to "hazardous conditions" when he decided to transfer him to a housing unit with D.C. inmates Fulton contends that because Warden Rios knew that his "group"and the D.C. inmates did not get along, his initial decision to house him in a cell with D.C. inmates subjected him to hazardous conditions [Record No. 64, p.10].

13

DISCUSSION
I. Standards for Dispositive Motions

Federal Rule of Civil Procedure 12(b)(6) provides for a defendant to move for dismissal for a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).   A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

The plain language of the rule requires that if the Rule 12(b)(6) motion has attachments which the Court considers, such as the declarations herein, then the motion "shall" be converted into a motion for summary judgment pursuant to Rule 56.  *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).   As the Court has considered the sworn Declarations submitted by the defendants, it must also examine the standards for summary judgment.

Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2007). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

14

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23. With these standards in mind, the Court addresses the defendants' motion under Fed. R. Civ. P. 56.

## II. Claims Relating to Administrative Remedies

In his Complaint, Fulton alleged that the defendants prevented him from filing grievances concerning not only the alleged excessive use of force on April 19, 2007, but also the other issues raised in this action. The defendants respond that Fulton failed to pursue administrative remedies and that they did not overtly prevent him from pursuing administrative remedies either within the prison or with the BOP Regional Director.

Denise Gottleib's sworn Declaration and attachments from the BOP's official records convince the Court that Fulton failed to exhaust his April 19, 2007 claims through the BOP administrative remedy process. The "Inmate Discipline Data Chronological Disciplinary Record"

[Record No. 65-5], a BOP computer-generated document, reveals that Fulton filed no administrative remedies on or about the April 19, 2007 events. The document reveals that Fulton was able to, and did, avail himself of the administrative remedy process at USP-Big Sandy no less than eighteen times (18) in late August of 2007 regarding other complaints about various conditions of confinement and disciplinary matters.[7]

Furthermore, Fulton contradicts himself regarding the true nature of his claim, which was that he was denied access to the administrative remedy process. Despite Fulton's emphatic claim that he was prevented from filing grievances relating to the April 19, 2007 events, he made the following statements:

> It is a fact that the plaintiff overly filed administrative remedies and did all in power to ensure his complaints survived through the many obstacles put in place by the defendants. **Plaintiff's complaints were improperly rejected at every level although each complaint was timely filed and done so in accord to Bureau of Prison policy**.
>
> **A rejection of a complaint is deemed a waiver of the exhaustion process, and plaintiff was left with no other recourse but to file this civil rights complaint in district court. . . ."**

[Record No. 64, p.4 (Emphasis Added)].

These comments indicate that Fulton's real complaint is not that he was denied access to the administrative remedy process, but that it was a process that had yielded him unfavorable results at other levels, such as the BOP Regional Director. As Ms. Gottleib's attachments reveal, Fulton had unsuccessfully pursued the process eighteen times in late August of 2007. Fulton was told on eleven of those occasions that he had failed to pursue the initial step of the process by

---

[7] As previously noted, Fulton's BP-9 grievances were rejected because he failed to first pursue informal resolution with the Unit Team by submitting a BP-8 request [*See* Record No. 65-5].

seeking staff resolution through the filing of a BP-8 form with the Unit Team.

Essentially, Fulton claims that he was denied an effective grievance process by the BOP and that the denial of an effective grievance procedure denied him the right of due process under the Fifth Amendment of the United States Constitution. Fulton determined that it would be more expedient to simply bypass the entire BOP process and file suit on his claims in district court, claiming that he had "no other recourse."[8]

Fulton's Fifth Amendment due process claim, concerning an effective administrative remedy process, lacks merit. There is no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991) and *Flowers v. Tate*, 925 F.2d 1463, 1991 WL 22009 (6th Cir. (Ohio) February22, 2991)(Unpublished Disposition) .[9]

To support a due process claim, there must be an infringement of a protected liberty interest. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). Since Fulton had no liberty interest in a grievance process that was more sympathetic to

---

[8] Fulton's assertion that "A rejection of a complaint is deemed a waiver of the exhaustion process" is patently wrong. Notably, Fulton cites no authority for this erroneous statement.

[9] *See also  Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430 (6th Cir. (Mich.) October 30, 2003) (Not selected for publication in the Federal Reporter); *Overholt v. Unibase Data Entry, Inc.* 221 F.3d 1335, 2000 WL 799760, **3 (6th Cir. (Ohio) June 14, 2000) (Unpublished Disposition) ("In addition, Overholt did not state a viable First Amendment claim concerning the prison grievance procedure.  The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).  Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.");

17

his opinions and complaints, he has no Fifth Amendment claim on this issue.

Fulton has failed to make a showing sufficient to establish the existence of an element essential to this claim. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment in favor of the defendants on this Fifth Amendment claim is warranted.

### III. Liability of Former Warden Rios
#### A. Personal Involvement in Alleged Excessive Force

The claims against Former Warden Rios will be dismissed. None of Fulton's redundant filings, docketed as Record No. 64, mention that Former Warden Rios was personally involved in the events which transpired in the hallway on April 19, 2007. In describing the events leading up to the alleged application of excessive force, Fulton stated: "Captain Gourdoze informed Lt. Perrin that the warden was occupied at the time." [Record no. 64-3, p.2].

To be liable under *Bivens*, a plaintiff must show that the named defendant performed the acts that resulted in the deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S.Ct. 598 (1976); *Bivens*, 403 U.S. at 390 n. 2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998). A plaintiff must show "'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d at 421).

Former Warden Rios would not have had an opportunity either to participate in, or to condone, the other defendants' alleged actions of excessive force, given the rapid time sequence Fulton described. Fulton fails to establish that Former Warden Rios was directly or personally involved in the hallway events of April 19, 2007.

Furthermore, Fulton cannot argue that Rios was liable simply because he was the other

defendants' superior.  The doctrine of *respondeat superior* is not a basis of liability in a *Bivens* action. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Kesterson v. Luttrell*, 172 F.3d 48 (6th Cir.1998) (Table); *Jones v. City of Memphis*, 586 F.2d 622, 625 (6th Cir.1978). Accordingly, Summary judgment in favor of Former Warden Rios is proper.

B. Subjecting Plaintiff to "Hazardous Conditions"

The only personal involvement by Former Warden Rios which Fulton alleged was the decision to place him in a cell with D.C. inmates. Rios claims that this decision subjected him to "hazardous conditions."[10] Even assuming that Rios made that specific housing decision (about which Rios has no specific memory), the claim lacks any substance.

First, Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of a lawfully convicted prisoner," 18 U.S.C. §3621;  *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and  *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). Prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment.  *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983);  *Meachum v. Fano*, 427 U.S. 215, 225, (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976).

Second, Fulton now complains that he was  was ultimately confined in the SHU (after the

---

[10] Fulton stated as follows:

In the presence of myself, Lt. Pennington and numerous inmates from Washington, D.C. and (illegible) where Lt. Perrin stated 'I don't care about all of that bullshit, the warden ordered the move and you will either move into a cell or we'll find you a spot in the S.H.U. (Special Housing Unit).'"

[Record No. 64, p.3].

19

episode with the staff members on April 19, 2007). However, Fulton's initial concern on April

19, 2007 was that he was to be housed in a cell with D.C. inmates. He  sought assistance from

the staff on this concern and the staff was attempting to address the issue when the disturbance

in the hallway ensued.   As the defendants correctly note, Fulton was taken to SHU on April 19,

2007. He was <u>not</u> in fact housed in a cell with any D.C. inmates and he suffered no bodily

contact at the hands of any D.C. inmates. Fulton does not allege that he was ultimately placed

in a cell with D.C. inmates. The crux of his complaint against Rios was the housing assignment

which had been made <u>before</u> the hallway events ensued on April 19, 2007.

Fulton suffered no harm as a result of the initial decision, which was never executed due

to the intervening events which transpired in the hallway.   These subsequent events rendered

moot Fulton's complaints about the initial decision to house him with D.C. inmates. There is no

genuine issue of material fact on this issue. Summary judgment on this issue is warranted.

IV. <u>Eighth Amendment Claims</u>
A. <u>Excessive Force</u>

Fulton claims that Defendants applied excessive force to him; the defendants claim that

they applied only limited force to control an obstinate and resistant prisoner who was disobeying

orders. They contend that Fulton was engaging in disorderly conduct and was reaching for some

type of weapon hidden in his pocket  Fulton's description of the events are as follows:

> On April 19, 2007, after being unable to resolve a dispute over a cell assignment,
> I was escorted by Lt. Pennington and Lt. Perrin from Housing Unit C-3 to
> Corridor #1 in front of the facility mess-hall, in search of Warden Rios.

> As myself and both lieutenants approached the mess-hall, we all came across
> Captain Gourdoze.

20

Lt. Pennington entered the mess-hall leaving us behind and Lt. Perrin instructed that I stand to the side while he engaged in a conversation with the captain. He then proceeded to explain my housing situation from a biased perspective.

Captain Gourdoze informed Lt. Perrin that the warden was occupied at the time.

Lt. Perrin then instructed I walk alone and stand in front of the Lieutenant's office in the corridor. Enroute to the Lt's office, I encountered one of my brothers and waved for him to me. I intended to fill him on my situation. . . .

As I was walking and speaking to my brother, Lt. Perrin yells loudly down the corridor "hey you, get your ass back inside" referring to my brother.

Lt. Perrin then yelled to me "get down to the office area now." I immediately explained to Lt. Perrin that the yelling was not necessary and I simply was letting my brother know what was going on.

[Record No. 64-3, pp. 2-4].

Fulton further states that Lt. Perrin became agitated with his behavior and informed him that he (Fulton) did not run the prison. When Fulton continued to explain that he did not want to have a conversation with a staff member without another inmate present, Lt. Perrin responded "I don't care what you have to say, matter of fact you're going to the S.H.U." [*Id.*, p.4]. Fulton continued arguing with Lt. Perrin and questioned why he was being put in S.H.U. Fulton demanded to speak to the Captain. Fulton states that when Lt. Perrin refused, he "calmly" asked to see the Captain and continued to question Lt. Perrin's authority [*Id.*, pp. 4-5].

Fulton then explains that "due to Lt. Perrin's yelling," several staff members gathered around him, specifically, Defendants Lt. Adams, Lt. Perrin, Correctional Officer Hamilton, Correctional Officer Gardner and several of the John Does [*Id.*, p.5]. When Lt. Perrin ordered him to submit to hand restraints, he "continued to ask for a valid reasoning for being placed in the SHU."[*Id.*]. Fulton claims that at that point, Lt. Perrin jumped on him, grabbed his neck, and

21

called for the other defendants to force him to the ground, which they did [*Id*]. Fulton states "At no time did I provoke or resist the staff (defendants")." [*Id*.]. Fulton then describes how the defendants physically assaulted him [*Id*., pp. 5-7].

Fulton' <u>own</u> description above refutes his claim that he was peacefully standing in the hallway doing nothing to incur action by the defendants. Fulton freely states that he questioned his move to another cell, began a conversation with another inmate whom he describes as his "brother," refused to end that conversation when Lt. Perrin ordered him to do so, questioned Lt. Perrin's authority to place him in the SHU, decided he did not want to "speak" to Lt. Perrin without another inmate present, argued with Lt. Perrin, demanded to see the Captain, and then lectured Lt. Perrin that "yelling was not necessary." The other inmate did not leave, and Fulton continued with the conversation.[11]

In evaluating a claim of alleged excessive force, the court must consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response." *Whitley*, 475 U.S. at 321.

Fulton had already been told to cease conversing with the other inmate and he admits that he refused to do so, instead arguing with Lt. Perrin and questioning his authority. His own statements reveal impudence, insubordination, belligerence, and disregard for authority. Fulton's claim that he felt uncomfortable speaking to an administrative figure without another inmate

---

[11] Even in his initial Complaint, Fulton aptly described his behavior as follows: **"As I continued to pursue my disagreement**, Lt. Perrin then stated in the presence of numerous inmates in the unit . . ." [Record No. 2, p.4, (Emphasis Added)].

present ignores the fact that it was he who asked the staff to address his initial concern about being housed with D.C. inmates.

As the defendants accurately note, Fulton has spent almost half of his time in BOP custody in either administrative detention or segregated housing, due to twenty-four different disciplinary offenses for insolence, refusing orders, fighting, disruptive conduct, interfering with a security device, gambling, possession of intoxicants, possession of a dangerous weapon, and possession of drugs. This documented history indicates Fulton's aggressive and combative propensities, and his disdain for authority. His own version of the events supports the defendants' decisions to apply some force to him when they perceived that he was reaching into his pocket, for what appeared to be a four-inch possible weapon.

Finally, Fulton produces no evidence of any physical bodily injury resulting from the April 19, 2007, incident. Physician's Assistant Bhadra examined Fulton right after the event and found no evidence of injury, or blood. Such evidence would have been consistent with the excessive force which Fulton alleges was applied to him.

The moving party has the burden of showing there is an absence of evidence supporting a claim. *Celotex*, 477 U.S. at 324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, the specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

The defendants have shown that there is an absence of evidence to support an excessive

23

force claim against them. *Celotex*, 477 U.S. at 324-25. Fulton has failed to carry his burden to come forward with "affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 257.

## B. Denial of Medical Care

The test to determine whether prison officials have acted with "deliberate indifference" has both an objective and subjective component. *See Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000). "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L. Ed.2d 251 (1976)).

The objective component requires an inmate to show that the alleged deprivation is " 'sufficiently serious'" and that he is "'incarcerated under conditions posing a substantial risk of serious harm.'" *Brown*, 207 F.3d at 867. To satisfy the subjective component, an inmate must show that prison officials had "'a sufficiently culpable state of mind.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L. Ed.2d 811 (1994)).

This standard is satisfied if "the official knows of and disregards an excessive risk to inmate health or safety." *Id*. Furthermore, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'" *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th

24

Cir.2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir.1976)).

Mr. Samiran Bhadra, the Physician's Assistant at USP-Big Sandy, states that he examined Fulton on April 19, 2007. Although Fulton claimed that he had blood on his mouth, Bhadra states that he found no blood on Fulton's mouth. Bhadra documented his findings on the medical record attached to his Declaration. Bhadra determined that Fulton had sustained no injuries, and that no further medical attention was required.

Fulton has failed to satisfy the <u>objective</u> criteria of the analysis because he has produced no medical evidence supporting his claim that he sustained a serious injury or any injury at all. In order to show a constitutional violation based on an alleged delay in medical treatment, the prisoner must place verifying medical evidence in the record establishing the detrimental effect of the delay. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir.2001) (affirming grant of summary judgment to the defendants). Fulton cannot make this showing because there is no evidence of a physical injury for which he was allegedly denied treatment.

Fulton has not satisfied the <u>subjective</u> criteria of the analysis because he was, in fact, afforded immediate attention, having been examined by a Physician's Assistant who found no evidence of an injury. Clearly, there was no deliberate indifference to Fulton's "medical" needs. Summary judgment will be entered in favor of the defendants on this claim.

## V. <u>Retaliation</u>

Fulton has not articulated a valid retaliation claim. His allegations on the issue are broad and lack specificity. In both his Complaint and his collective Responses filed as Record No. 64,

he failed to describe or adequately explain the exact nature of the "retaliation."[12]

The typical inmate retaliation claim inmate arises when an inmate claims that prison officials retaliated against him for filing grievances.  That is not the case with Fulton because the defendants have demonstrated that Fulton did not in fact file grievances on his claims.  At best, his "retaliation" claim is actually a complaint about his alleged inability to pursue administrative remedies, which the Court has already addressed and rejected.

Fulton has asserted only vague allegations on this issue. His broad allegations of retaliation do not survive the higher threshold of a "Motion to Dismiss" or a "Motion for Summary Judgment" as explained by *Celotex* and other cases. His unsubstantiated claims are insufficient to raise a genuine issue of material fact under Fed. R. Civ. P. 56.  *See Scheid v. Fanny Farmer Candy Shops, Inc*. 859 F.2d 434, 437 (6th Cir. 1988); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994)(citing *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir.), *cert. denied*, 484 U.S. 945 (1987)). Summary judgment on this claim is warranted.

<u>Summary</u>

The defendants have carried their summary judgment burden on all issues raised in this action. While Fulton's claims survived initial screening, they do not survive the more rigorous scrutiny required to overcome a motion for summary judgment under Fed. R. Civ. P. 56. Fulton's responses either substantiate the defendants' claims (such as on the issues of alleged excessive force and denied medical care) or are so vague and conclusory that they fail to create a genuine

---

[12] Fulton alleged in his Complaint:"More importantly, Plaintiff has been subjected to repeated threats and retaliatory actions by staff and administrative figures" [Record No. 2-3, p1].

26

issue of material fact. Summary Judgment will be entered in favor of the defendants. For this reason, the defendants' "Motion to Stay Discovery" [Record No. 66] will be denied as moot.

CONCLUSION

(1)     The "Motion to Dismiss or in the Alternative, a Motion for Summary Judgment"[Record No. 46] filed by counsel for the named federal defendants; is **GRANTED**.

(2)     All First, Fifth and Eighth Amendment constitutional claims asserted by Plaintiff Richard Fulton are **DISMISSED with prejudice**.

(3)     The "Motion to Stay Discovery" [Record No. 66] is **DENIED as MOOT**.

(4)     This action [7:08-CV-77-KKC] is  **DISMISSED with prejudice**.

(5)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants herein.

Dated this 30th day of July, 2009.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**